IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JONATHAN JOHNSON,

        Plaintiff,

  vs.                                      Civil Action 2:13-CV-788
                                              Judge Smith
                                              Magistrate Judge King

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

I.    Background

    This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 17, the Commissioner's *Memorandum in Opposition*, Doc. No. 22, and plaintiff's *Reply*, Doc No. 23.

    Plaintiff Jonathan Johnson filed his applications for benefits on August 12, 2010, alleging that he has been disabled since January 1, 2008, as a result of cerebral palsy, degenerative disc disease in the back and epilepsy. *PageID* 206. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    On January 24, 2012, plaintiff, represented by counsel, appeared and testified at an administrative hearing, as did Lynne Kaufman, who testified as a vocational expert. On April 12, 2012, the administrative law judge issued a written decision concluding that plaintiff was not disabled from January 1, 2008, through the date of the administrative decision. *PageID*

75-84. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 3, 2013. *PageID* 58-62.

Plaintiff was 48 years of age at the time of the administrative hearing. *See PageID* 119, 201. He has an eleventh grade education, obtained his GED, and is able to communicate in English. *PageID* 120, 206. He has past relevant work as a security guard, a funeral attendant and a driver/cleaner. *PageID* 150. He has not engaged in substantial gainful activity since January 1, 2008, his alleged date of onset of disability. *PageID* 78. Plaintiff's insured status for disability insurance benefits extends to December 31, 2016. *Id.*

## II. Evidence of Record

Plaintiff has suffered from cerebral palsy since childhood. Robert Whitehead, M.D., who examined plaintiff on behalf of the state agency on October 18, 2010, *PageID* 259-65, noted that plaintiff's gait was altered with a slightly shortened swing phase and dragging of the feet. *PageID* 260. Plaintiff did not use a walking device or brace. On examination, plaintiff's finger to nose pointing was uncoordinated and there was some past pointing, particularly on the right side. *PageID* 261. Plaintiff had difficulty with his right hand on fine motor skill testing. *Id.* His pinch was off slightly on the right and his coordination skills were below average on the right and slightly below average on the left. *Id.* There was normal range of motion of the spine, without spasm or tenderness. Straight leg raises were negative. Deep tendon reflexes were symmetric; heel and toe walking were intact. *PageID* 260. Dr. Whitehead diagnosed cerebral palsy and low back pain with normal examination. He opined that plaintiff would

2

be best suited for "light or sedentary duty work not requiring repetitive hand activities or foot pedal duties." *PageID* 261. Plaintiff should avoid uneven surfaces and climbing. *Id.* According to Dr. Whitehead,

> [i]t is obvious by examination that this gentleman has adapted very well to his cerebral palsy. I observed him get dressed without any significant difficulty. However,... over the course of time as he ages it is going to become more and more difficult for him to function at the level he currently does.

*Id.*

In November 2010, the file was reviewed by state agency physician W. Jerry McCloud, M.D., *PageID* 266-73, who opined that plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds and sit, stand or walk up to 6 hours in an 8-hour workday. *PageID* 267. Dr. McCloud explained that these exertional limitations were related to plaintiff's claimed fatigue. *Id.* Dr. McCloud concluded that the extent of plaintiff's alleged functional loss is not medically supported. *PageID* 271.

In April 2011, another state agency physician, Bradley Lewis, M.D., reviewed the record and determined that plaintiff could lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently; he could sit, stand or walk up to 6 hours in an 8-hour workday. *PageID* 282. Plaintiff could only occasionally climb ladders/ropes/scaffolds. *PageID* 283. In light of plaintiff's altered gait and history of falls, plaintiff should avoid working at heights and with machinery. *PageID* 285. Dr. Lewis also concluded that the severity of plaintiff's alleged impairment was not entirely supported by the medical evidence. *PageID* 286.

Treatment records from the Columbus Free Clinic for the period September 2010 through June 2011 document a history of falls and muscle spasms. *PageID* 275-80, 293-96.

Plaintiff presented to the emergency room at OSU Medical Center in August 2011, complaining of neck and back pain. The examining physician found 5/5 strength in plaintiff's extremities and pain to palpation of the lumbar spine. Plaintiff had difficulty standing straight and walking due to the pain in his low back. *PageID* 316-17.

On November 18, 2011, Robert Mazo, D.O., a neurologist, examined plaintiff upon referral from another physician. Plaintiff complained of "increased dexterity problems and difficulty standing for long periods of time." *PageID* 343. On examination, straight leg raising was negative. *PageID* 344. Dr. Mazo noted some athetoid-like movements in the upper extremities. Plaintiff walked slowly but without a wide-based gait; he had a good arm swing, but had difficulty with tandem walking. Romberg test was negative and there was no arm drift. He could stand on his toes and heels without assistance. There were no gross focal cerebellar, sensory, or motor deficits nor was there muscle atrophy or fasciculation other than what appeared to be a slight increased tone in both lower extremities and cerebella-type symptomatology with discoordination in the upper extremities, especially on pronation and supination. There was some minimal past pointing symmetrically. Deep tendon reflexes were somewhat hyperactive but symmetrical. There were no pathologic reflexes or clonus. Dr. Mazo confirmed a diagnosis of cerebral palsy, and recommended a baseline CT scan of the brain and EEG. *PageID* 344.

When seen for reevaluation on December 2, 2011, Dr. Mazo reported that plaintiff's EEG was normal and that the CT scan of the brain showed no true

abnormality.[1] Dr. Mazo concluded, "I am not really sure what is causing his presentation other than people who are older who have a history of cerebral palsy since childhood can get worse as they age." Dr. Mazo recommended observation. *PageID* 345-46.

Plaintiff was seen by Michael Evers, D.O., at the OSU Spine Center in January 2012. Dr. Evers diagnosed back pain, degenerative disc disease of the lumbar spine and lumbar radiculitis. *PageID* 348-51.

**III. Administrative Hearing and Decision**

At the administrative hearing, plaintiff testified that he last worked in September 2011, performing basic custodial work. *PageID* 120. He normally worked between 15-20 hours per week. *PageID* 121. He stopped working because his back condition changed and he could no longer operate the heavy machinery required to perform his job duties. *Id.*

Plaintiff also complained of lower back problems and cerebral palsy. *PageID* 126. His cerebral palsy affects his walking, coordination and hands. *PageID* 126-27. Plaintiff specifically testified that his dexterity is affected by the condition. "It affects my ability to really grasp and stuff. This was one of the reasons I left armed security because of my dexterity problem and handling the weapon properly." *PageID* 127.

Plaintiff estimated that he can lift and carry no more than five or ten pounds. *PageID* 127. He can walk one-half block, stand 15-30 minutes, and sit for 2-3 hours, with breaks. *PageID* 127-28. He cannot bend at the waist to pick up a newspaper from the floor; he can squat to get the newspaper, "but it will be painful." *PageID* 128. He cannot use his arms and shoulders to push, pull or reach on a continuous basis. *Id.* Sitting

---

[1] There was some soft tissue swelling and a soft tissue hematoma in the posterior scalp with a possible underlying fractured bone fragment of the external occipital

5

for long periods of time hurts his back. *Id.* He can "print pretty good" but he has trouble grasping, cannot pick up nuts and bolts, and has trouble typing. *PageID* 129.

In describing his daily activities, plaintiff testified that he occasionally takes his children to school, goes fishing, and handles his own personal care. *PageID* 132. He does not cook, wash dishes, perform any cleaning, or laundry. *PageID* 135.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently; to sit, stand or walk up to 6 hours in an 8-hour workday; to only occasionally climb ladders/ropes/scaffolds; but who must avoid exposure to work hazards such as heights and machinery. *PageID* 151. In response, the vocational expert testified that plaintiff could return to his past relevant work as a security guard and funeral attendant. *Id.*

In his written decision, the administrative law judge found that plaintiff's severe impairments consist of cerebral palsy and low back pain. *PageID* 78. Plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to perform a reduced range of light work: he can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; he can sit, stand and walk for about 6 hours each in an 8-hour workday; he can occasionally climb ladders, ropes and scaffolds; he should avoid all exposure to hazards such as dangerous moving machinery and unprotected heights. *PageID* 80.

In determining plaintiff's RFC, the administrative law judge gave great weight to the opinions of the evaluating (*i.e.*, non-examining)

---

protuberance. There was tenderness over the ear on examination.

physicians, Dr. McCloud and Dr. Lewis, finding their opinions consistent with the medical and other evidence. *PageID* 82.

The administrative law judge relied on the testimony of the vocational expert to find that plaintiff's RFC would permit the performance of his past relevant work as a security guard and funeral attendant. *PageID* 83. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2008, through the date of the administrative law judge's decision. *PageID* 83-84.

**IV. Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing

*Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In his *Statement of Specific Errors*, plaintiff contends that the administrative law judge failed to consider all medical source opinions as required by 20 C.F.R. §§ 404.1527(c), 416.927(c). Specifically, plaintiff contends that the administrative law judge failed to indicate what weight, if any, was given to the opinion of Dr. Whitehead and failed to address the factors required by the relevant regulations. *Plaintiff's Statement of Specific Errors*, *PageID* 362. The Commissioner concedes that the administrative law judge failed to properly weigh Dr. Whitehead's opinion, *Memorandum in Opposition, PageID* 380, but contends that this error was harmless. The Court disagrees.

The Commissioner's own regulations require an evaluation of every medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Although the opinion of a non-treating source is not entitled to controlling weight, every medical opinion must nevertheless be weighed by reference to factors such as the nature of the relationship with the claimant and the supportability and consistency of the opinion. *Id*. Generally, more weight is given to the medical "opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *see also Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012)(noting that, ordinarily, a nonexamining source's opinion is entitled to less deference than is an examining (but non treating) source's opinion, which is entitled to less deference than is a treating source's opinion). But "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . .

. may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3.

As noted *supra*, the administrative law judge gave "great weight" to the opinions of the non-examining state agency reviewing physicians, Drs. McCloud and Lewis, *PageID* 82, but failed to indicate the weight given to the opinion of Dr. Whitehead, who conducted a consultative examination of plaintiff. *See* PageID 83. The parties agree that the administrative law judge erred in this regard but the Commissioner argues that the error was harmless:

> [E]ven had [the administrative law judge] credited Dr. Whitehead's opinion (and discounted Dr. McCloud's and Dr. Lewis's assessments for not including each of Dr. Whitehead's restrictions), and thus limited Mr. Johnson to light work, with no repetitive hand or foot pedal activities, [the administrative law judge's] final finding would have remained the same: that Mr. Johnson could perform his past relevant work as a security guard as actually and generally performed, and his past relevant work as a funeral attendant as actually performed.

*Memorandum in Opposition*, *PageID* 380-81. In support of this argument, the Commissioner referred to plaintiff's description of his past jobs as a security guard and funeral attendant, to the testimony of the vocational expert and to the *Dictionary of Occupational Titles* and contends that neither of plaintiff's past jobs required handling and the use of foot pedals inconsistent with Dr. Whitehead's restrictions. *Id*. *PageID* 381.

Where the failure to follow the Commissioner's own regulations prejudices the claimant or deprives the claimant of a substantial right, the decision of the Commissioner cannot be upheld even if it is supported by substantial evidence. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)(citing *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)). Where the procedural rule at issue is intended to confer rights

9

on the claimant, remand is almost always warranted, even if "a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546. Where the procedural rule at issue is merely an "adjudicatory tool" designed to help the agency make its decision, however, remand is appropriate only where the failure to follow the required procedure prejudices the claimant. *Rabber*, 582 F.3d at 651. *See also Wilson*, at 546-47. This is true, moreover, even if the Commissioner's flawed decision is supported by substantial evidence. *Rabbers*, at 651. Viewed another way, an error falling within the second category is properly characterized as harmless when "concrete factual and medical evidence" is "apparent in the record" and demonstrates that the Commissioner would have reached the same result even had the administrative law judge followed the required procedure. *Id*. at 657-58.

This Court concludes that the error conceded by the Commissioner was not harmless. As plaintiff points out, the evidence of record regarding plaintiff's ability to handle items is not unambiguous. For example, plaintiff testified that his cerebral palsy affects his walking, coordination and hands. *PageID* 126-27. The condition "affects my ability to really grasp and stuff. This was one of the reasons I left armed security because of my dexterity problem and handling the weapon properly." *PageID* 127. If this Court were to affirm an outcome that merely <u>could</u> have been supported by the evidence – in particular, if this Court were to determine what jobs were available to plaintiff based on his limitations – that process "'would propel [the Court] into the domain which Congress has set aside exclusively for the administrative agency.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 192, 2009 WL 2628355, at * *10 (6th Cir. Aug.

27, 2009)(quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). This Court declines to engage in such a process.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: June 3, 2014                      *s/Norah McCann King*
                                                   Norah McCann King
                                                   United States Magistrate Judge